UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TALEIA PICKENS,

    Plaintiff,

                                            Case No.

  -v-

COMMUNITY PROGRAMS, INC. d/b/a
MERIDIAN HEALTH SERVICES
a Michigan Nonprofit Corporation,

    Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, TALEIA PICKENS ("Plaintiff"), by and through her undersigned counsel, hereby brings this Complaint for damages and demand for a jury trial against Defendant, COMMUNITY PROGRAMS, INC. d/b/a MERIDIAN HEALTH SERVICES ("Defendant"), and in support thereof, alleges as follows:

## JURISDICTION AND PARTIES

1. Plaintiff is an individual residing in Genesee County, Michigan.

2. Defendant is a Michigan Nonprofit Corporation that does business in Oakland County, Michigan.

3. This action arises under the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. § 2000e, *et seq.*; Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), M.C.L.A. § 37.1101, *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; and Michigan's Persons with Disabilities Civil Rights Act (

1

"PWDCRA"), M.C.L.A. § § 37.1101, *et seq*.

4. This Court has jurisdiction pursuant to 28 U.S.C.A. § 1331 and 28 U.S.C.A. § 1343(a)(4) for Plaintiff's claims brought pursuant to Title VII and the ADA. This Court also has supplemental jurisdiction pursuant to 28 U.S.C.A. § 1367 over Plaintiff's claims brought pursuant to ELCRA and PWDCRA.

5. The facts and unlawful employment practices within the meaning of Title VII, the ELCRA, the ADA and the PWDCRA giving rise to this Complaint occurred within the Eastern District of Michigan.

6. At all times relevant hereto, Defendant was Plaintiff's employer within the meaning of Title VII, the ELCRA, the ADA and the PWDCRA.

7. At all times relevant hereto, Plaintiff was Defendant's employee within the meaning of Title VII, the ELCRA, the ADA and the PWDCRA.

## **CONDITIONS PRECEDENT**

8. Plaintiff has exhausted her administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 25, 2021.

9. Plaintiff's right to sue was issued on September 9, 2022.

10. Plaintiff has timely filed this complaint within ninety (90) days of receipt of the EEOC Notice of Right to Sue.

11. All conditions precedent to this action have been satisfied and/or waived.

## FACTUAL ALLEGATIONS

12. Plaintiff is a female.

13. Plaintiff was hired by Defendant in approximately July 2019.

14. Plaintiff was hired by Defendant to work as a full-time Medical Technician.

15. At all relevant times, Plaintiff was a stellar employee.

16. Upon information and belief, Plaintiff did not receive any negative performance evaluations.

17. Throughout the duration of her employment, Plaintiff was not subject to any workplace discipline in the form of a write up or otherwise.

18. During her employment with Defendant, Plaintiff was pregnant.

19. Plaintiff suffered from nausea and severe vomiting during her pregnancy.

20. On March 3, 2020, Plaintiff was admitted to the hospital due to pregnancy complications.

21. Plaintiff was diagnosed with hyperemesis gravidarum.

22. Hyperemesis gravidarum is a condition with symptoms including extreme, persistent nausea and vomiting during pregnancy.

23. Plaintiff returned to the hospital on March 6, 2020, due to her severe hyperemesis gravidarum symptoms.

24. That same day, Plaintiff informed her manager, Megan Aubin, and direct

supervisor, Aaron Lilly, that she planned to work the following day, but was not sure whether she would be able to make it through the day due to her severe hyperemesis gravidarum symptoms.

25. Defendant, through its agents, servants and/or employees, advised Plaintiff to stay home if she was too ill to work.

26. On March 8, 2020, Plaintiff was admitted to the hospital again due to her severe hyperemesis gravidarum symptoms.

27. On or about March 12, 2020, Mr. Lilly called and informed Plaintiff that she could apply for short-term disability because she was unable to work due to her severe hyperemesis gravidarum symptoms.

28. Plaintiff completed and submitted the short-term disability paperwork and was approved for short-term disability benefits through Defendant's third-party insurance provider, Guardian Insurance Company.

29. It is common knowledge that Guardian will request an employee's medical documentation from a provider, upon request by Defendant.

30. For months, Plaintiff's physician's office faxed Plaintiff's medical notes to Guardian.

31. Guardian repeatedly renewed Plaintiff's short-term disability benefits.

32. While Plaintiff was out on short-term disability, Plaintiff continued to keep Defendant's Human Resources Generalist, Kari Gray, and Ms. Aubin apprised of her condition and ability to return to work.

33. On May 7, 2020, Plaintiff visited her doctor who provided a note stating that Plaintiff is to be excused from work until May 15, 2020.

34. Plaintiff provided the medical note concerning her physician's approval for continued medical leave to Defendant.

35. Thereafter, Plaintiff informed Defendant, through its agents, servants, and/or employees, that her next doctor's appointment was in the beginning of June and that she would provide updated medical documentation at that time.

36. Plaintiff also informed Defendant, through its agents, servants and/or employees that she was unable to return to work prior thereto because her hyperemesis gravidarum symptoms were still severe and unmanageable.

37. On or about May 27, 2020, Ms. Gray inquired about Plaintiff's plan for returning to work.

38. Plaintiff again advised Ms. Gray that her doctor's appointment was in the beginning of June, but that she will attempt to get an earlier appointment.

39. Specifically, Plaintiff advised Ms. Gray that: "No my doctor's appointment is not until beginning of this month. I will call my doctor on Monday and see if they could get me in sooner."

40. Plaintiff received no response from Ms. Gray.

41. The correspondence between Plaintiff and Ms. Gray did not provide Plaintiff with notice of termination.

42. On or about June 3, 2020, Plaintiff informed Ms. Gray that she was

5

cleared to return to work on June 5, 2020 and asked to be placed on the schedule.

43. Specifically, Plaintiff stated: "I just left my doctor, and I am cleared to go back to work on the fifth of this month. Could it be possible to get put on a schedule for the following weekend?"

44. Plaintiff provided Ms. Gray a copy of her medical note.

45. The medical note provided to Ms. Gray stated, in relevant part:

TALEIA is cleared to return to work on: 6/5/2020. Patient is currently under care of OBGYN for pregnancy. Due to complications of pregnancy patient is excused from work until 6/5/2020.

46. Ms. Pickens sent Ms. Gray a follow-up email correspondence on or about June 4, 2020.

47. Ms. Gray did not respond.

48. Plaintiff sent several other follow-up emails to Ms. Gray concerning the status of her return-to-work.

49. Defendant, through its *agents*, servants, and/or employees, failed to respond to Plaintiff despite the numerous emails sent concerning her employment status.

50. When Ms. Gray failed to respond to Plaintiff, Plaintiff reached out to Ms. Aubin, and advised her of the fact that she has reached out to HR on numerous occasions, to no avail.

51. Ms. Aubin informed Plaintiff that Eric Rosen, Defendant HR, will be contacting her.

52. Plaintiff followed up with Ms. Aubin again on June 9, 2020, stating: "Hey, I was just wondering did I lose my job or what's going on cause I haven't heard back yet."

53. Ms. Aubin responded by indicating that she will call Mr. Rosen.

54. The following day, on June 16, 2020, Plaintiff sent Ms. Gray an email, which states: "I've emailed you a few times, not sure if you got it or not. Could you please give me a call?…"

55. Plaintiff did not hear from either Ms. Gray or Mr. Rosen.

56. Plaintiff again followed up with Ms. Aubin on June 17, 2020, in a text message, which states: "Hey Megan, I still haven't heard from Kari or Eric. I've emailed her again. My benefits were terminated and no one is contacted me back."

57. In response, Ms. Aubin stated that she will call Mr. Rosen.

58. On June 18, 2020, Plaintiff sent Ms. Aubin another text message, and asked her if she had any information because Plaintiff had not heard from Defendant.

59. Ms. Aubin was surprised that no one had reached out to Plaintiff and sent a response text message stating: "Are you serious?!", and provided Plaintiff with Ms. Gray's phone number, and advised Plaintiff to "Call Kari tomorrow."

60. The following day, Plaintiff sent Ms. Gray an email correspondence stating: "I will call you today at 11am due to me not receiving any response from anyone all month. If 11am does not work for you, please let me know."

61. Plaintiff also emailed Mr. Rosen concerning the fact that she did not ever

7

receive an update regarding her return to work.

62. On or around June 19, 2020, Plaintiff finally spoke to Mr. Rosen, who advised Plaintiff that he would speak to Ms. Aubin about getting Plaintiff back on the schedule but indicated that her position was already replaced by a new hire.

63. Again, Plaintiff followed up with Ms. Aubin on June 22, 2020, and asked her if she spoke to Mr. Rosen regarding her returning to work.

64. In response, Ms. Aubin indicated that she did not speak with Mr. Rosen, but will contact him that same day. *Id*.

65. Plaintiff did not hear back from Ms. Aubin.

66. Therefore, Plaintiff sent a text message to Ms. Aubin on June 26, 2020, asking Ms. Aubin if she spoke to Mr. Rosen.

67. Ms. Aubin did not respond.

68. As a result, Plaintiff was effectively terminated despite her multiple attempts to return to work.

69. On or before June 26, 2020, Defendant never provided Plaintiff notice of their intent to terminate her employment prior to terminating her employment.

70. On or before June 26, 2020, Defendant never advised Plaintiff prior to terminating her employment that they could not accommodate her medical leave.

71. On or before June 26, 2020, Defendant never advised Plaintiff prior to terminating her employment that her medical leave accommodation is causing an undue burden.

8

72. On or before June 26, 2020, Defendant never advised Plaintiff prior to terminating her employment that if she does not return to work by a certain date, her employment will be terminated.

73. On or before June 26, 2020, Defendant never engaged in the interactive process as it relates to Plaintiff's medical leave accommodation.

74. Defendant discriminated against, harassed, and made Plaintiff endure a hostile work environment based on her pregnancy and associated disability.

## COUNT I
## DISCRIMIANTION IN VIOLATION OF THE ADA

75. Plaintiff realleges and incorporates paragraphs 1 through 74 herein.

76. Plaintiff was a qualified individual with a disability under the ADA, 42 U.S.C. § 12101 *et seq*.

77. At all times material hereto, Plaintiff was qualified for the position(s) that she held or desired to hold with Defendant.

78. Defendant was required to make reasonable accommodations to the known physical limitations of Plaintiff, an otherwise qualified individual.

79. Plaintiff's pregnancy related disability qualifies as a disability under the ADA.

80. Plaintiff was unable to perform her job due to her pregnancy related condition, and therefore Defendant was required to provide a reasonable accommodation such as medical leave.

81. Providing Plaintiff with medical leave until she was cleared to return to work by

9

her physician would not have posed an undue hardship on Defendant.

82. Under the ADA, Defendant was legally obligated to refrain from discriminating against Plaintiff because of her pregnancy related disability.

83. Plaintiff could perform the essential functions for the positions she held or desired to hold with Defendant with a reasonable accommodation for medical leave.

84. Defendant violated the ADA through the adverse employment actions outlined above.

85. Defendant's discriminator actions were willful, deliberate, and intentional.

86. The injuries to Plaintiff that arose as a consequence of Defendant's conduct were foreseeable and intentionally caused by Defendants.

87. As a direct and proximate result of the Defendant's violations of the ADA, Plaintiff suffered economic damages including, but not limited to, loss of wages, loss of benefits, back pay, front pay, and other expenses.

88. As a direct and proximate result of Defendant's violations of the ADA, Plaintiff has suffered emotional and physical distress, and mental and physical anguish.

89. As a direct, natural, proximate, and foreseeable result of the actions of Defendant, Plaintiff has suffered injuries for which she is entitled to compensation, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary

losses.

90. The conduct of Defendant was so willful and wanton and performed with malice or reckless indifference to the statutory rights of Plaintiff, as to entitle her an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

91. Plaintiff is entitled to recover reasonable attorney's fees and litigation expenses pursuant to the ADA.

92. Plaintiff has suffered irreparable harm for which there is no plain, adequate or complete remedy at law.

## COUNT II
## DISCRIMIANTION IN VIOLATION OF THE PWDCRA

93. Plaintiff realleges and incorporates paragraphs 1 through 74 herein.

94. Plaintiff was a qualified individual with a disability under the PWDCRA

95. At all times material hereto, Plaintiff was qualified for the position(s) that she held or desired to hold with Defendant.

96. Defendant was required to make reasonable accommodations to the known physical limitations of Plaintiff, an otherwise qualified individual.

97. Plaintiff's pregnancy related disability qualifies as a disability under the PWDCRA.

98. Plaintiff was unable to perform her job due to her pregnancy related disability.

99. Defendant was required to engage in the interactive process conceding Plaintiff's

11

disability.

100. Defendant was required to provide a reasonable accommodation such as medical leave.

101. Providing Plaintiff with medical leave until she was cleared to return to work by her physician would not have posed an undue hardship on Defendant.

102. Under the PWDCRA, Defendant was legally obligated to refrain from discriminating against Plaintiff because of her pregnancy related disability.

103. Plaintiff could perform the essential functions for the positions she held or desired to hold with Defendant with a reasonable accommodation for medical leave.

104. Defendant violated the PWDCRA through the adverse employment actions outlined above.

105. Defendant's discriminatory actions were willful, deliberate, and intentional.

106. The injuries to Plaintiff that arose as a consequence of Defendant's conduct were foreseeable and intentionally caused by Defendants.

107. As a direct and proximate result of the Defendant's violations of the PWDCRA, Plaintiff suffered economic damages including, but not limited to, loss of wages, loss of benefits, back pay, front pay, and other expenses.

108. As a direct and proximate result of Defendant's violations of the PWDCRA, Plaintiff has suffered emotional and physical distress, and mental and physical anguish.

109. As a direct, natural, proximate, and foreseeable result of the actions of Defendant, Plaintiff has suffered injuries for which she is entitled to compensation, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

110. The conduct of Defendant was so willful and wanton and performed with malice or reckless indifference to the statutory rights of Plaintiff.

111. Plaintiff is entitled to recover reasonable attorney's fees and litigation expenses pursuant to the PWDCRA.

112. Plaintiff has suffered irreparable harm for which there is no plain, adequate or complete remedy at law.

## COUNT III
## SEX AND/OR PREGNANCY DISCRIMINATION IN VIOLATION OF TITLE VII

113. Plaintiff realleges and incorporates paragraphs 1 through 74 herein.

114. Plaintiff is a member of a protected group under the Title VII Civil Rights Act, 42 U.S.C.A. § 2000e, *et seq.*, on the basis of her sex, as used in the Act the term because of sex includes because of pregnancy.

115. Defendant violated the aforementioned Title VII Civil Rights Act by the following acts:

   a. Terminating or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition or privilege of employment, because of her sex and/or pregnancy;

  b. Limiting, segregating, or classifying Plaintiff in a way which deprived or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff because of her sex and/or pregnancy;

  c. Segregating, classifying, or otherwise discriminating against Plaintiff on the basis of her sex and/or pregnancy with respect to a term, condition or privilege of employment, including a benefit plan or system; and/or

  d. Failing to provide a work environment free from sex and/or pregnancy discrimination.

116. As a direct and proximate result of Defendant's violation of the Title VII Civil Rights Act, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

117. As a further direct and proximate result of Defendant's violation of the Title VII Civil Rights Act, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

118. Plaintiff is entitled to recover reasonable attorney's fees and litigation expenses pursuant to the Title VII.

## COUNT IV
## SEX/PREGNANCY DISCRIMINATION IN VIOLATION OF ELCRA

119. Plaintiff reincorporates and reallges paragraphs 1 through 74 above.

14

120. Plaintiff is a member of a protected group under the Elliott Larsen Civil Rights Act, M.C.L.A. 37.2101, *et seq.*, on the basis of her sex, as used in the Act the term sex includes pregnancy.

121. Defendant violated ELCRA by the following acts:

   a. Terminating or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition or privilege of employment, because of her sex and/or pregnancy;

   b. Limiting, segregating, or classifying Plaintiff in a way which deprived or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff because of her sex and/or pregnancy;

   c. Segregating, classifying, or otherwise discriminating against Plaintiff on the basis of her sex and/or pregnancy with respect to a term, condition or privilege of employment, including a benefit plan or system; and/or

   d. Failing to provide a work environment free from sex and/or pregnancy discrimination.

122. As a direct and proximate result of Defendant's violation of the ELCRA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

123. As a further direct and proximate result of Defendant's violation of the ELCRA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work and will so suffer in the future; she has been required to employ the services

of an attorney to bring this lawsuit and will suffer additional damages in the future.

124. Plaintiff is entitled to recover reasonable attorney's fees and litigation expenses pursuant to the ELCRA.

## **RELIEF REQUESTED**

**WHEREFORE**, Plaintiff prays that this Honorable Court grant the following remedies:

a. Declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation of Title VII, the ELCRA; the ADA and the PWDCRA

b. Award Plaintiff all lost wages and benefits, past and future, to which she is entitled;

c. Award Plaintiff appropriate equitable relief;

d. Award Plaintiff compensatory damages;

e. Award Plaintiff exemplary damages;

f. Award Plaintiff punitive damages;

g. All other relief available under Title VII, ELCRA, ADA and PWDCA.

h. Award Plaintiff reasonable attorney fees, costs and interest; and

i. Award such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury.

Respectfully submitted,

*/s/ Chanelle J. Ventura*
 **MORGAN & MORGAN, P.A.**
 CHANELLE J. VENTURA
 Fla. Bar No. 1002876
 8151 Peters Rd., Suite 4000
 Plantation, FL 33324
MICHAEL N. HANNA
Mich. Bar No. P81462
Fla. Bar No. 85035
2000 Town Center, Suite 1900
Southfield, MI 48075
(954)318-0268
cventura@forthepeople.com
mhanna@forthepeople.com
Attorneys for Plaintiff