UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TALEIA PICKENS,

      Plaintiff,

                                 Case No. 22-cv-12970

v.                              Honorable Linda V. Parker

COMMUNITY PROGRAMS, INC. D/B/A
MERIDIAN HEALTH SERVICES,

      Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 35)

Taleia Pickens ("Plaintiff") initiated this civil rights lawsuit on December 8, 2022.  (ECF No. 1.)  Plaintiff alleges that she was discriminated against due to her pregnancy and pregnancy-related disability (hyperemesis gravidarum)[1] and was terminated despite multiple attempts to return to work after her medical leave expired.  (ECF No. 1 at PageID.5-7.)  Plaintiff alleges the following counts: Count I, discrimination in violation of the Americans with Disabilities Act; Count II, discrimination in violation of the State of Michigan's Persons With Disabilities Civil Rights Act; Count III, sex discrimination in violation of Title VII of the Civil

---

[1] Hyperemesis gravidarum is a severe form of nausea and vomiting during pregnancy. ECF No. 1 at PageID.3; *see Beyond Morning Sickness: Hyperemesis Gravidarum* (last updated Feb.26, 2026), https://www.fda.gov/consumers/knowledge-and-news-women-owh-blog/beyond-morning-sickness-hyperemesis-gravidarum.

Rights Act of 1964; and Count IV, sex discrimination in violation of the State of Michigan's Elliott-Larsen Civil Rights Act.  (ECF No. 1 at PageID.9-16.) Defendant filed a motion for summary judgment on July 31, 2025.  (ECF No. 35.)

The matter is presently before the Court on Defendant's motion for summary judgment.  The motion is fully briefed.  (ECF Nos. 35, 36, & 37.)  Finding the facts and legal arguments sufficiently presented in the parties' filings, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).  For the reasons that follow, the Court **DENIES** Defendant's motion for summary judgment.

## BACKGROUND

On May 14, 2019, Plaintiff completed an employment application for Defendant.  (ECF No. 35-3 at PageID.226.)  Her application included a contractual agreement, that, among other terms, required Plaintiff to agree to a 180-day limitations period for any future claim.  The relevant provision states:

> I further recognize that if employed by [Defendant], I agree, in consideration of my employment, to file any claim or lawsuit arising out of or in any way related to my employment and/or cessation of my employment within one hundred-eighty (180) days after the claim(s) arise(s) or within the applicable statutory limitation period(s) provided by law, whichever occurs first, and my failure to do so shall act as a bar to any claim that I may have.

ECF No. 35-3 at PageID.226.

On August 21, 2019, Defendant hired Plaintiff, and scheduled her to work twelve-hour shifts on Fridays, Saturdays and Sundays.  (ECF No. 35 at PageID.196; ECF No. 36 at PageID.369.)  Throughout the course of her employment, Plaintiff performed well and "received no documented performance incidents."  (ECF No. 36 at PageID.369.)  On or around March 1, 2020, Plaintiff learned that she was pregnant.  *Id.*  In the days that followed, Plaintiff was admitted to the hospital on several occasions and was eventually diagnosed with hyperemesis gravidarum.  *Id.*

On March 11, 2020, Plaintiff applied for short-term disability leave.  (ECF No. 35 at PageID.198; ECF No. 36 at PageID.370.)  Her claim was approved at the end of March.  (ECF No. 35 at PageID.198-99; ECF No. 36 at PageID.370.)  In order to continue receiving benefits, Plaintiff was required to provide a physician's statement certifying her continued disability.  (ECF 35-10 at PageID.333.)  Plaintiff produced several doctor's notes extending her medical leave, including a note obtained on May 7, 2020, which extended her leave to May 15, 2020.  (ECF No. 35-11 at PageID.339-343.)

On May 11, 2020, Kari Gray, one of Defendant's HR professionals, contacted Plaintiff to inquire about her plan for return.  (ECF No. 35-12 at PageID.345.)  Plaintiff responded promptly, explaining that her doctor extended her leave to May 15, but was evaluating her condition "week by week."  *Id.*  On

May 14, 2020, Plaintiff again emailed Kari Gray and informed her that she was experiencing childcare issues that could interfere with her upcoming shift.  (ECF No. 35 at PageID.200; ECF No 35-14 at PageID.350.)  Plaintiff did not appear for work the following day and did not send any additional emails between May 15, 2020, and May 18, 2020.  (ECF No. 35 at PageID.201.)

On May 21, 2020, Plaintiff emailed one of Defendant's HR representatives, Eric Rosencrants, to share that her follow-up appointment with her physician had been rescheduled to early June.  (ECF No. 35-16 at PageID.354.)  Plaintiff also shared this information with Kari Gray when Gray inquired about Plaintiff's status on May 27, 2020.  (ECF No. 36 at PageID.371.)

Plaintiff attended her follow-up appointment on June 3, 2020, and obtained a doctor's note clearing her for work on June 5, 2020.  (ECF No. 36 at PageID.372.)  Plaintiff sent this information to Gray and asked to be put on the schedule.  *Id.*  Gray did not respond to Plaintiff.  *Id.*  Plaintiff made several follow-up emails to Gray and other HR representatives but did not receive a response.  *Id.*  Plaintiff then contacted her supervisor, who was shocked by the lack of response and offered Plaintiff guidance on how to proceed.  *Id.*  On or about June 19, 2020, Plaintiff spoke with Eric Rosencrants, and he informed her that her position had been replaced by a new hire.  *Id.*

On March 25, 2021, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission.  (ECF No. 35-17 at PageID.356.) The EEOC subsequently issued a Right-to-Sue Letter, and Plaintiff filed a lawsuit against Defendant on December 8, 2022.  (ECF No. 1.)

In its present motion, Defendant moves for summary judgment on the following issues:

(a) that Plaintiff quit or otherwise abandoned her employment;

(b) that Plaintiff's claims are barred as they were not brought within the contractual statute of limitations; and

(c) that Plaintiff's federal claims are barred as they were not timely filed with the EEOC.

ECF No. 35 at PageID.189.

The Court will address each argument in turn.

**LEGAL STANDARD**

Summary judgment pursuant to Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a

5

party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). It is not the court's responsibility to construct a party's argument from the record or search out facts from the record supporting those arguments. *See, e.g., Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th

Cir. 1989) (citing Frito-Lay, Inc. v. Willoughby, 863 F.2d 1029, 1034 (D.C. Cir. 1988)) ("the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact.").

## ANALYSIS

### A. Genuine Issues of Material Fact Exist As to Whether Plaintiff Abandoned Her Employment

Defendant seeks summary judgment on its argument that Plaintiff quit or otherwise abandoned her employment. (*Id.* at PageID.204-207.) Yet, at the same time, Defendant states that it will assume, for purposes of this motion, that Plaintiff can establish a prima facie case of discrimination under Title VII, the ADA, ELCRA and PWDCRA. (*Id.* at PageID.207.) Under these statutes, a plaintiff must have suffered an adverse employment action to establish a prima facie case. *See Hurtt v. Int'l Servs., Inc.*, 627 F. App'x 414, 420 (6th Cir. 2015) (listing elements of a prima facie case under the ADA and PWDCRA); *Latowski v. Northwoods Nursing Ctr.*, 549 F. App'x 478 (6th Cir. 2013) (listing elements for a prima facie case of sex discrimination under ELCRA and Title VII.) By assuming that Plaintiff can establish a prima facie case, Defendant necessarily assumes that Plaintiff suffered an adverse employment action. Accordingly, this position is in conflict with Defendant's request for summary judgment. Nevertheless, the record reflects a genuine dispute of material fact as to whether Plaintiff abandoned her employment. Summary judgment on this issue is therefore improper.

Viewing the facts in the light most favorable to Plaintiff, the record supports the conclusion that Plaintiff did not voluntarily quit or abandon her employment. Defendant contends that Plaintiff abandoned her job on May 18, 2020, based on her failure to return to work on May 15, which was the date a doctor's note cleared her to resume her duties. (ECF No. 35 at PageID.207-08; 214.)  But that position overlooks evidence of ongoing conversations between Plaintiff and Defendant's agents on the days leading up to the alleged date of abandonment. (*See* ECF No. 35-14 at PageID.350.)

The record shows that Plaintiff remained in communication with Defendant's agents throughout the duration of her medical leave and immediately before it expired. (ECF No. 35 at PageID.199-201; ECF No. 36 at PageID.370-373.)  On Thursday, May 7, 2020, Plaintiff obtained a doctor's note which extended her medical leave to May 15, 2020.  (ECF No. 35-11 at PageID.343; ECF No. 35-12 at PageID.345.)  Four days later, on Monday, May 11, 2020, Kari Gray contacted Plaintiff to request an update on her return.  (ECF No. 35-12 at PageID.345.)  Plaintiff promptly responded and provided an update.  *Id.*  Gray thanked Plaintiff for the update and asked Plaintiff to forward any future extensions.  *Id.*  Gray's expectation for new updates is inconsistent with Defendant's claim that it believed Plaintiff abandoned her employment only a few days after this exchange.  (ECF No. 35 at PageID.208.)

Importantly, even *after* the date of Plaintiff's alleged abandonment, Defendant's agents continued to communicate with Plaintiff as if she were still employed.  For example, HR representatives contacted Plaintiff to inform her that her disability benefits would expire at the end of May and to ask about her anticipated date of return.  (ECF No. 36 at PageID.371; ECF No. 36 at PageID.376.)  Defendant does not dispute that these exchanges occurred.  (ECF No. 37 at PageID.395-96.)

Defendant also contends that Plaintiff abandoned her employment because she filed for unemployment benefits.  The record does not support that conclusion.  The evidence reflects that Plaintiff sought these benefits to only supplement her income, as her short-term disability benefits only covered sixty percent of her regular wages.  (ECF No. 35 at PageID.199.)  Indeed, a request for information sent to Defendant from Michigan's Department of Labor and Opportunity identified Plaintiff's separation reason as a "leave of absence." (ECF No. 35-13 at PageID.347-48.)  Defendant's agents also referred internally to Plaintiff as being on a leave of absence; at least one such communication occurred on May 21, 2020, several days after the alleged abandonment date.  (*See* ECF No. 35-16 at PageID.354 ("Didn't she file for unemployment due to her taking a leave of absence?"))

9

Finally, the record shows that both after May 18, 2020, and after obtaining a doctor's note clearing her for work in June, Plaintiff expressed a desire to resume working.  She asked to be placed on the schedule and made several attempts to contact Defendant's agents for an update on her work schedule and employment status.  (ECF No. 36 at PageID.371-373.)  Defendant's agents did not respond to her requests.  (*Id.* at PageID.372.)

Although additional evidence exists, these examples are sufficient to demonstrate that Defendant has not met its burden of showing the absence of a genuine dispute of material fact regarding Plaintiff's alleged abandonment.  Defendant's request for summary judgment on this ground is therefore denied.

### B.  Plaintiff's State-Law Claims

The parties do not dispute that Michigan law governs Plaintiff's state-law claims.  (*See* ECF No. 35 at PageID.210; ECF No. 36 at PageID.387.)  Therefore, the Court will apply Michigan law to Plaintiff's first state-law claim, which pertains to the Persons With Disabilities Civil Rights Act ("PWDCRA"), as well as Plaintiff's second state-law claim under the Elliot-Larsen Civil Rights Act ("ELCRA").

Michigan applies a three-year statute of limitations to PWDCRA and ELCRA claims.  *See* Mich. Comp. Laws Ann. § 600.5805(2).  However, Plaintiff entered into a contractual agreement with Defendant that limited the statute of

limitations for any future claims to 180 days.  (*See* ECF No. 35-3 at PageID.226; ECF No. 35-6 at PageID.313.)

Plaintiff does not dispute that she signed the contractual agreement accepting a shortened limitations period.[2]  Accordingly, Defendant argues that Plaintiff's claims are time-barred because she agreed to the provision but failed to file her lawsuit within the 180-day period.  (ECF No. 35 at PageID.210.) However, Plaintiff correctly notes that Michigan law permits courts to strike down shortened limitations periods if they are deemed unreasonable.  The Michigan Supreme Court's recent decision in *Rayford v. American House Roseville I, LLC*, held that adhesion contracts that shorten statute of limitations periods are subject to heightened judicial scrutiny.  *Rayford v. Am. House Roseville I, LLC*, No. 163989, 2025 WL 2177754, at *15 (Mich. July 31, 2025).  Under Michigan law, courts are now required to first determine whether a challenged employment agreement is adhesive and, if so, evaluate the reasonableness of the shortened limitations period. *Id.*

In *Rayford*, the Michigan Supreme Court observed that contracts of adhesion frequently arise in the employment context because "many employees who need a job are in a weaker position than the employer, who can . . . refuse to hire the

---

[2] Plaintiff does not dispute that she first acknowledged and signed the agreement in her application for employment, and again after receiving Defendant's Employee Handbook. ECF No. 35-3 at PageID.226; ECF No. 35-6 at PageID.313.

employee if the employee tries to negotiate or refuses to sign the agreement." *Id.* at \*18; *see also Herweyer v. Clark Highway Servs., Inc.*, 455 Mich. 14, 21; 564 N.W.2d 857, 860 (1997) (noting that an employee-plaintiff "has only two options: (1) sign the employment contract as drafted by the employer or (2) lose the job.").

Here, the parties' contract is adhesive.  Plaintiff had no opportunity to negotiate its terms and was effectively presented with a "take it or leave it" contract.[3]  When Plaintiff applied for her position, her application included a binding agreement requiring her to accept a shortened limitations period.  (ECF No. 35-3.)  Plaintiff was later presented with a nearly identical agreement when confirming receipt of Defendant's Employee Handbook.[4]  Defendant does not suggest—either in its motion for summary judgment, or in its reply addressing the new case law—that the parties' employment contract should be construed as anything other than an adhesive contract.  (*See* ECF No. 35; ECF No. 37 at PageID.394-95.)  Plaintiff, as an applicant and later employee, occupied a weaker bargaining position and had no realistic ability to negotiate or avoid the provision.

---

[3] *See Morris v. Metriyakool*, 418 Mich. 423, 471; 344 N.W.2d 736, 757 (1984) ("A contract of adhesion is a contract which has some or all of the following characteristics: the parties to the contract were of unequal bargaining strength; the contract is expressed in standardized language prepared by the stronger party to meet his needs; and the contract is offered by the stronger party to the weaker party on a "take it or leave it" basis.")

[4] The agreements differ in form but not substance. *See* ECF No. 35-3 at PageID.226; ECF No. 35-6 at PageID.313.

The limitations provision was not the product of meaningful negotiation but instead a non-negotiable condition imposed by Defendant.

Accordingly, based on these facts, the Court finds that the parties' employment agreement constitutes an adhesion contract.  The Court will therefore proceed to evaluate the reasonableness of the shortened limitations period found within.

*Camelot Excavating Co. v. St. Paul Fire & Marine Ins. Co.* provides the governing test for evaluating the reasonableness of a contractually shortened limitations period.  A shortened limitations period in an adhesion contract may only be deemed reasonable if: (1) the claimant has sufficient opportunity to investigate and file an action, (2) the time is not so short as to work a practical abrogation of the right of action, and (3) the action is not barred before the loss or damage can be ascertained.  *Rayford v. Am. House Roseville I, LLC*, No. 163989, 2025 WL 2177754. At \*13 (Mich. July 31, 2025) (citing *Camelot Excavating Co. v. St. Paul Fire & Marine Ins. Co.*, 410 Mich. 118, 127; 301 N.W.2d 275, 278 (1981).  Here, evaluating the *Camelot* factors in the light most favorable to Plaintiff, a reasonable jury could conclude that the contractual limitations period was unreasonable.[5]  Summary judgment is therefore inappropriate.

---

[5] The Court notes that the record may require further development to fully address the statute of limitations issue, particularly because *Rayford* was decided after the close of discovery.  (ECF No. 31.)  On the current record, however, Defendant has not shown that the shortened limitations

13

First, Defendant argues that Plaintiff had sufficient opportunity to investigate and file an action because she was not hospitalized throughout the *entire* 180-day period and made arrangements to apply for school and employment. But Plaintiff's efforts to reapply to school and seek employment involved routine, familiar processes that bear no resemblance to the requirements, complexity, or burden of initiating litigation.  Moreover, after considering Plaintiff's individual circumstances—being in the later stages of pregnancy, experiencing severe illness throughout her pregnancy, and giving birth to her son during the 180-day window—the Court finds that Plaintiff did not have sufficient opportunity to investigate and initiate this action.  Indeed, the record indicates that Plaintiff hired an attorney and pursued her rights after she finally gave birth to her son.  (*See* ECF No. 37-2 at PageID.403.)

The second factor of the *Camelot* reasonableness test weighs heavily against Defendant.  As stated in *Rayford*, "the difference between an employee having three years to file a lawsuit, as opposed to just six months, cannot be understated." *Rayford*, No. 163989, 2025 WL 2177754, at *15.  A  plaintiff's need to secure counsel, gather information, and exhaust any administrative remedies before filing underscore why Defendant's severely shortened period is impracticable.  Given

---

period is reasonable. The Court will entertain a motion for limited discovery on this issue for trial purposes only.

these considerations, the 180-day limitations period operates as a practical abrogation on Plaintiff's right to bring her claim.

Finally, the Court is not persuaded that Plaintiff's full loss or damage could have been ascertained during the 180-day period.  Plaintiff seeks economic damages, but also non-economic damages for emotional distress, mental anguish, physical distress, pain and suffering, inconvenience, loss of enjoyment of life, as well as future economic and non-economic damages.  (ECF No. 1 at 10.) Defendant argues that these damages would have been apparent at the time of Plaintiff's termination, yet it also acknowledges in its reply brief that Plaintiff's damages could develop over time.  (ECF No. 37 at PageID.395.)  The *Rayford* court considered this exact issue:

> While damages in an employment action are typically tied to lost wages (which are easily determined by reference to the date of termination), other claims may also be included, such as damages for emotional distress. These could be harder to discern and could take more time. A reduction from 3 years to a mere 180 days is drastic and very well could affect a plaintiff's ability to assess their damages.
>
> *Rayford v. Am. House Roseville I, LLC*, No. 163989, 2025 WL 2177754, at *19 (Mich. July 31, 2025).

Plaintiff's non-economic damages were unlikely to be fully ascertainable within the 180-day period.  Moreover, the parties remain in dispute about the actual date of Plaintiff's termination, which would make it difficult for Plaintiff to determine her economic damages with any certainty.

15

Because the *Camelot* reasonableness test is conjunctive, Defendant must satisfy all three elements to prevail.  Weighing the facts in the light most favorable to Plaintiff, Defendant satisfies none of them.

Likewise, Plaintiff's federal claims could not have been time-barred. The Sixth Circuit has made clear that parties cannot contractually shorten the limitations periods of federal laws that supply their own. *See Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 831(6th Cir. 2019) ("enforcing the express limitation period of Title VII not only protects the scheme Congress created with that statute; it is also conceptually in harmony with our interpretation of similar statutes."); *see also Thompson v. Fresh Prods., LLC*, 985 F.3d 509 (6th Cir. 2021) (citing *Ibid*.) ("where statutes that create rights and remedies contain their own limitation periods, the limitation period should be treated as a substantive right which may not be waived.")

Accordingly, the Court finds that Defendant is not entitled to summary judgment on its argument that Plaintiff's claims are time-barred due to the parties' contractual limitations provision.

### C. **Plaintiff's Federal Claims under Title VII and the ADA**

Exhausting administrative remedies is a prerequisite to a plaintiff filing suit under Title VII or the ADA.  *See Scott v. Eastman Chem. Co*., 275 Fed.Appx. 466, 470 (6th Cir.2008) (citing *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 379

16

(6th Cir.2002)).  One requirement includes filing a Charge of Discrimination. When a plaintiff proceeds before both the EEOC and a state agency, the Charge of Discrimination must be filed within 300 days of the alleged discriminatory act. *See Williams v. Northwest Airlines, Inc.*, 53 Fed.Appx. 350, 352 (6th Cir.2002) (citing 42 U.S.C. § 2000e–5(e)).

Plaintiff filed her Charge of Discrimination within the 300-day period.  As discussed above, a reasonable jury could find that Plaintiff did not abandon her employment and thus was not terminated on May 18, 2020, as Defendant suggests. (ECF No. 35 at PageID.207-08; 214.)  Instead, a reasonable jury could conclude that Plaintiff's termination occurred on or about June 19, 2020, when Defendant's agent, Eric Rosencrants, informed her that her position had been filled by a new hire. (ECF No. 36 at PageID.373.)  Under this timeline, the operative date of the alleged discrimination would be June 19, 2020, and Plaintiff's 300-day window to file a charge would have closed on April 15, 2021.  Viewing all justifiable inferences in favor of Plaintiff, a reasonable jury could conclude that her federal claims are not time-barred because she filed her Charge of Discrimination on March 25, 2021.

Accordingly, summary judgment on this issue must be denied.

17

## CONCLUSION

Defendant has not demonstrated that the evidence is so one-sided that it must prevail as a matter of law.  The Court concludes that general issues of material fact remain as to all of Plaintiff's claims and that the disputes must be resolved by a jury.  Accordingly, Plaintiff's claims may proceed to trial.

Therefore,

**IT IS ORDERED** that Defendant's motion for summary judgment (ECF No. 35) is **DENIED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: March 26, 2026